# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Michael T. Ulery,   Case No. 3:18CV851

    Plaintiff

    v.   **ORDER**

Commissioner of Social Security,

    Defendant

This is a Social Security case in which the plaintiff, Michael Ulery, appeals the Commissioner's decision denying his application for benefits.

An administrative law judge found that Ulery suffered from multiple severe impairments, including cervical degenerative disc disease, syringomyelia and/or cord syrinx, right carpal tunnel and cubital tunnel syndromes, and right orbit inflammatory pseudo-tumor. (Doc. 11, PageID 82). The ALJ ruled that had the residual functional capacity (RFC) to perform light work, provided that he, *inter alia*, 1) never climb, crawl, or reach overhead with bilateral extremities; 2) never walk on uneven surfaces or work near unprotected heights; and 3) not hold his neck in upward or downward positions for more than five minutes. (*Id.*, PageID 85). Because Ulery could perform jobs that existed in significant numbers in the national economy – including sorter, inspector/packager, and assembler – the ALJ held that Ulery was not disabled. (*Id.*, PageID 97–98).

Pending is Magistrate Judge Burke's Report and Recommendation, which recommends that I affirm the Commissioner's decision. (Doc. 17). Ulery has filed an objection, arguing that

the Magistrate Judge erred in finding that there was substantial evidentiary support for the ALJ's decision to give little weight to the opinion of Joshua Line, an occupational therapist whom Ulery saw only one time. (Doc. 18, PageID 1158–60).

On de novo review of the R&R, *see* 28 U.S.C. § 636(b)(1), I overrule Ulery's objection, adopt the R&R as the order of the court, and affirm the Commissioner's decision.

## Background

Line performed a "physical functional capacity evaluation" of Ulery in November, 2016. (Doc. 11, PageID 91). He found that Ulery had "less than sedentary capacity for all types of lifting and carrying," was a "moderate fall risk," and could stand for less than seventeen minutes, walk no more than 800 feet, and sit for not quite sixty-five minutes." (*Id.*). He also concluded that Ulery could not stoop, crouch, or do low-level work for more than four minutes. (*Id.*).

The ALJ gave "[l]ittle weight" to this opinion. (*Id.*, PageID 91–92).

She noted, first, that Line's opinion "was based on only a 'snapshot' of the claimant's functioning" during "one evaluation of the claimant rather than an assessment of the claimant's longitudinal functioning." (*Id.*, PageID 92). In contrast, the ALJ continued, Ulery's "longitudinal treatment history displays he had reduced range of motion in the neck but otherwise he consistently had a normal gait with no cranial nerve deficit, full motor strength in the bilateral and upper extremities, symmetric reflexes, normal pulses and no other abnormalities in any of the extremities." (*Id.*).

The ALJ then found that Ulery "did not appear to give full effort on some of the testing" – specifically the "handgrip testing" of his right and left hands. (*Id.*).

The ALJ concluded that, while Ulery "would have some restrictions in the areas outlined in Mr. Line's opinion, the longitudinal record does not support the degree of restrictions and little weight to the opinion is appropriate." (*Id.*).

Ulery objects that the longitudinal record does not, in fact, "contradict Mr. Line's opinions[.]" (Doc. 18, PageID 1159). He acknowledges that his medical records show a history of normal gait, but speculates that this is because "he was most likely observed during these times from his walk to the waiting room into the doctor's office." (*Id.*). Ulery emphasizes that, because Line's testing was "specifically designed to provide an accurate depiction and opinion of his ability to do certain activities such as walk," it offers a "more accurate representation of [his] ability to perform these activities in a work setting." (*Id.*).

Ulery also faults the ALJ for relying on her finding that he did not give full effort during part of Line's physical evaluation. (Doc. 18, PageID 1158).

## Discussion

As the Magistrate Judge explained, "not all medical sources are 'acceptable medical sources'" who qualify as treating sources and may give medical opinions (Doc. 17, PageID 1150); *see* 20 C.F.R. § 404.1513.

An occupational therapist such as Line is a medical source, but not an "acceptable medical source." 20 C.F.R. § 404.1513(d). The applicable regulations provide that a medical source's opinion is relevant evidence, but leave it to the ALJ's discretion to decide how much weight the opinion should have in each case:

> Opinions from "other medical sources" may reflect the source's judgment about some of the same issues addressed in medical opinions from 'acceptable medical sources,' including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions.

> Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

SSR 06–03p, 2006 WL 2329939, *5.

In this case, the ALJ reasonably explained why Line's opinion had little "probative value" in light of "all the evidence" in the record.

First, Line's opinion imposed more, and more substantial, restrictions on Ulery's ability to work than what his longitudinal record otherwise suggested. To justify that decision, the ALJ cited and summarized nearly a hundred pages of Ulery's medical records. (Doc. 11, PageID 92). In contrast, and seeming to underscore the reasonableness of the ALJ's decision, Ulery objections cite no medical evidence that supports the restrictions that Line imposed or otherwise corroborates his opinion that Ulery was "unable to return to work on a full-time or part-time basis based on his work tolerances." (Doc. 11, PageID 91).

Second, the ALJ permissibly relied on the fact that Line had seen Ulery on only one occasion. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013) (ALJ may consider length of treatment relationship in weighing opinions from "therapists who do not qualify as 'acceptable medical sources'").

To be sure, Ulery's argument that the ALJ should have given more weight to Line's testing, which Line "specifically designed" to measure Ulery's ability to walk (Doc. 18, PageID 1159), is not without force. But the fact that the ALJ could have afforded more weight to Line's opinion is no basis for overturning the ALJ's well-reasoned and well-supported decision not to. On the contrary, "[a] reviewing court will affirm the Commissioner's decision if it is based on

substantial evidence" – as it was here – "even if substantial evidence would also have supported the opposite conclusion." *Gayheart*, *supra*, 710 F.3d at 374.

Third, it was also proper for the ALJ to give some weight to the fact that Ulery did not give "full effort" during at least a portion of Line's testing. While such a conclusion might not, standing alone, support the ALJ's handling of Line's opinion, I need not address that issue because the ALJ's two principal grounds for her decision – the inconsistency of Line's opinion with the medical record as a whole, and the "snapshot" nature of his single evaluation – constitute substantial evidence for her decision to give Line's opinion only little weight.

## Conclusion

It is, therefore,

ORDERED THAT:

1. Ulery's objection to the Magistrate Judge's Report and Recommendation (Doc. 18) be, and the same hereby is, overruled;

2. The Magistrate Judge's Report and Recommendation (Doc. 17) be, and the same hereby is, adopted as the order of the court; and

3. The Commissioner's decision be, and the same hereby is, affirmed.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge